## In re ROWE.
### No. 2981.

District Court, E. D. New York.
June 28, 1933.

Thomas J. O'Neill, of New York City, for the application.

John Winans, of New York City, for respondent.

Before CAMPBELL, INCH, MOSCOWITZ, GALSTON, and BYERS, District Judges.

PER CURIAM.

This is an application, duly instituted, for the discipline of the above-named attorney, based upon the petition of the attorney appearing for the application, pursuant to the direction of the Senior Judge of this court, made under the following circumstances:

A motion was made by Mr. O'Neill for an order substituting him as attorney for plaintiff in the place of the respondent, in the action of Klemm v. N. Y., O. & W. R. Co., lately pending in this court, on affidavits made by the plaintiff Klemm and his wife, containing allegations of unprofessional conduct on the part of the respondent; and the respondent personally appeared on the return day of that motion and submitted in opposition only an affidavit of the plaintiff Klemm that he did not desire a change of attorney, but no denial of the allegations of unprofessional conduct, and neither the plaintiff Klemm nor the respondent appeared on the day set by the court for the examination of Mr. Klemm in relation to said motion.

An order to show cause, based upon the said petition, was granted by the Senior Judge, and, after a preliminary hearing, the hearing was directed to proceed before the entire court on June 5, 1933.

The respondent was admitted to the bar of this court on January 30, 1920.

Effective July 1, 1931, this court adopted, as part of the rules of this court, the following: "Adherence to the standards of professional conduct established by the Canons of Ethics of the New York State Bar Association will be exacted of all of the members of the Bar of this court." A copy of the foregoing was published in the New York Law Journal prior to the effective date.

These charges involve the alleged violation by the respondent of that part of Canon 28 reading as follows: " * * * It is disreputable * * * to breed litigation by seeking out those with claims for personal injuries * * * in order to secure them as clients, or to employ agents or runners for like purposes, or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases to his office, or to remunerate * * * others who may succeed, under the guise of giving disinterested friendly advice, in influencing * * * the sick and the injured, * * * to seek his professional services. * * * "

The taking of testimony herein required two half-day sessions of the court, on June 5th and 6th.

It is unnecessary to recapitulate the evidence, and only those charges involving solicitation since July 1, 1931, have been considered.

The evidence establishes, and we find, that the following persons were solicited by the respondent to place their respective personal injury causes in his hands as their attorney:

Anthony Lowe: This man, a resident of Philadelphia, Pa., was injured on November 26, 1931, while in the employ of the Reading Railroad Company, with the result that his leg was amputated. The respondent came to

see him personally about one month after the former left the hospital where he was treated, and talked to him about the case, exhibiting papers and news clippings showing his experience in other similar matters. Lowe testified that the respondent offered to pay him money pending the trial of his case, which was refused, as was the employment. The respondent's visit was preceded by at least one call made by one Barrett, who introduced himself as a former railroad switchman, and sought to induce Lowe to employ the respondent. Lowe had no prior acquaintance with either Barrett or Rowe.

This man received hospitalization from the date of the accident for the ensuing six months, and returned to his home during the latter part of April, 1932, and in August of that year was visited by the respondent's witness Paster, who testified that he called upon Lowe at the suggestion of a manufacturer of artificial limbs, for the purpose of interesting Lowe in the purchase of an artificial leg, and thus learned of Lowe's injury, which he communicated to the respondent by telephone. Paster testified that the reason for doing this was that Lowe had already suffered the amputation of his leg, and that Paster demonstrated to Lowe the merits of an artificial leg that he (Paster) was using. His testimony was clearly to the effect that it was because Lowe needed an artificial leg that he (Paster) called upon him.

The difficulty with this narrative is that Lowe did not suffer amputation of his leg until February, 1933. The bearing of that fact upon Paster's testimony and upon the respondent's conduct in offering him as a witness requires no comment.

Napoleon D. Cote: This witness lived in New London, Conn., and was injured on December 18, 1931, while in the employ of the Central Vermont Railroad Company. He was confined to a hospital for two months, and forty-eight hours after leaving the hospital was visited by a man named Burke, who said he represented the respondent, and who exhibited an Interstate Commerce Commission report of the accident; he urged that Rowe could handle the case so as to probably secure a verdict of $100,000, while a recovery of $3,000 only could be anticipated if some other lawyer were to be retained.

Burke made two more calls, and then the respondent visited Cote more than once, exhibiting clippings of other cases that he had handled, and a photostatic copy of a check representing the recovery in a prior case. The testimony concerning this solicitation was given by both Cote and his wife, and the latter testified that the respondent offered to the injured man $1,000 to "get by on" pending the trial.

In connection with this case, it was suggested but not demonstrated by the respondent that a next door neighbor of the injured man was really responsible for introducing both Burke and the respondent to Cote, but no evidence to this effect was offered. There was no prior knowledge on the part of Cote, concerning either Burke or the respondent.

John J. Henry: This witness was injured while in the employ of a railroad company on June 24, 1932, at Maybrook, N. Y. The respondent visited the injured man, calling in an automobile, accompanied by the said Barrett; the latter spoke to Henry first, and then went out to the car and brought Rowe into Henry's house; the respondent urged Henry to employ him, and promised that he would get a good verdict, and said that he represented train men, and that he could get a better result for him than the local counsel for the Brotherhood of Railroad Employees; the respondent exhibited newspaper clippings and photostatic copies of checks representing recoveries in other actions.

The testimony of Mr. Henry was corroborated by that of his wife, who said that the respondent called upon her while her husband was still in the hospital. Neither Barrett nor the respondent was known to either Mr. Henry or his wife prior to the time in question; nor did either of them send for the respondent directly or indirectly.

John Simpson: This man resided in Philadelphia, Pa., and was injured on July 4, 1931, while in the employ of the Baltimore & Ohio Railroad Company. He spent the months of July and August in a hospital, as also the months of January and February, 1932, having suffered an amputation of the leg. He identified as a caller the witness Paster, heretofore referred to, whom he met through a manufacturer of artificial limbs. Paster urged him to get a lawyer, and then the said Barrett called upon him, first recommending a lawyer by the name of Klein and then the respondent. This call of Barrett was followed by a visit from the respondent, who offered Simpson $150 a month until his case should be tried, according to Simpson's testimony, which was denied by Rowe. It is unnecessary to make a finding on this point, but the court was impressed with the sincerity of Simpson's testimony.

The attempt was made to discredit him because he was carried on the pay roll of the

railroad company under another name, for reasons which need not be discussed but which satisfied the court that the integrity of the witness' testimony was not impaired by that fact. He had no knowledge of the respondent, or Barrett, or Paster, prior to the call of the latter.

James A. Burns: This man was a resident of Elizabeth, N. J., and was injured on April 15, 1932, while in the employ of the Central Railroad of New Jersey; following treatment in a hospital which lasted eleven weeks, he returned to his home, and was there interviewed by the said Barrett, who solicited employment of the respondent, and the latter then came to Burns in person and urged his qualifications as a lawyer to successfully conduct the case. Burns explained that he was negotiating a settlement with the railroad and would not employ an attorney at that time, and a week later the respondent came again and offered to have his own doctor examine the witness without charge.

The wife of this witness corroborated his testimony, and explained how Barrett called, first representing himself as a railroad switchman. The respondent had the Interstate Commerce Commission report of this accident on the occasion of one of his calls, and during the course of the interview the respondent stated that large companies succeeded in taking advantage of injured persons through the signing of releases and so on, to the detriment of the former, and he offered to finance the husband as well as the railroad company was then doing, pending the negotiations. In spite of the fact that Burns refused to employ the respondent, the latter called upon him again, for the same purpose, in the month of November, 1932.

The wife testified that, when Barrett called, he said he represented Mr. Rowe but that he would not leave a lawyer's card because, if he did so, he would run the risk of being sent to jail for so doing, under the laws of the state of New Jersey. However, he wrote respondent's name and address on a slip of paper, and left it with Mrs. Burns.

There were other instances of solicitation concerning which we forbear to comment, particularly the Sofield case, for the reason that this injured man called upon the respondent in his office in New York in company with another client of the respondent, and it is not thought that the evidence completely demonstrated that the respondent caused this client (O'Connor) to solicit the retainer.

In general, it may be said that the respondent's attitude in the handling of this proceeding, and as a witness in his own behalf, created the impression in the minds of the court that his sense of responsibility for the observance of professional standards is signally deficient.

In the preliminary hearing of this matter before the Senior Judge, the respondent undertook to procure the presence of Barrett as a witness, but he failed to do so, although he was in communication with the latter as recently as one week prior to the hearing before this court. He did not subpœna Barrett as a witness; nor did he seek to examine him under commission prior to the hearing before this court, although he testified before the court that Barrett resided in Scranton, Pa., having stated at the preliminary examination that he resided in Queens county in this district. Barrett had been employed by the respondent to make special "investigations," and had been paid for so doing, within the past year.

Rowe's previous experiences with employees soliciting retainers, namely, one Meola and one Williamson—both of whom were brought up on charges for soliciting cases—failed apparently to make any impression upon the respondent. As recently as during the month of May, 1933, and after the institution of these proceedings, Rowe called upon an injured man by the name of James Maloney, residing in New York City, according to Maloney's testimony; although the respondent denied having done this, at first, he later admitted that he did make the call to see if he could get Maloney's case.

This call was preceded by one made by the said Barrett and O'Connor, the client who introduced Sofield to Rowe, which would be entirely consistent with an arrangement between the respondent and O'Connor as well as one between him and Barrett, to procure cases for the respondent.

Upon the evidence as a whole, we are persuaded that the respondent has deliberately and intentionally violated the requirements of Canon 28 of the Canons of Ethics, and has thus challenged the purpose of this court in adopting them as herein stated.

The respondent is suspended from practice as an attorney in this court for a period of three years, subject to reinstatement at the end of that time upon a proper showing that during the period of suspension he has refrained from unprofessional conduct in any aspect.

The court will file an order in ten days, conforming to this decision.